USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1808 UNITED STATES, Appellee, v. CHRISTOPHER N. SIA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Cyr, Stahl and Lynch, Circuit Judges. ______________ ____________________ Donald Thomas Bergerson on brief for appellant. _______________________ Jay P. McCloskey, United States Attorney, and F. Mark Terison, ________________ ________________ Assistant United States Attorney, on brief for appellee. ____________________ December 18, 1996 ____________________ Per Curiam. Defendant Christopher Sia appeals from the __________ denial of his motion for reduction of sentence under 18 U.S.C. 3582(c)(2). For the reasons that follow, we vacate and remand for further proceedings. I. The background need only be briefly recounted. Defendant pled guilty to four drug charges in 1991 and was sentenced to 293 months in prison. The offenses involved LSD appearing both on blotter paper and in liquid form. Thereafter, the Sentencing Commission retroactively revised the methodology for calculating the weight of LSD. See ___ U.S.S.G. App. C (Amendment 488) (amending 2D1.1) (effective November 1, 1993). At the recommendation of the Probation Office, the district court undertook a sua sponte ____________ reconsideration of defendant's sentence in light of the amendment (as it did in over a dozen other LSD cases in the district).  Applying the new formula to the blotter LSD, but deeming it inapplicable to the liquid LSD, the court reduced the amount of "heroin equivalent" attributable to defendant from 99 kilograms to 50 kilograms. Even with such reduction, however, defendant remained subject to the same offense level (of 38) and the same sentencing range as before. Accordingly, on November 12, 1993, without filings from defendant, the court issued an amended judgment finding that -2- "the term of incarceration imposed herein is unaffected by the change in the law." Defendant through counsel filed an appeal but then had second thoughts; counsel moved to withdraw and the appeal was dismissed in May 1994. In May 1996, defendant filed the instant pro se motion for reduction, contending in a lengthy memo that Amendment 488 did in fact apply to the liquid LSD as well as the blotter LSD. The government filed an opposition, and the district court denied the motion in a margin order stating: "After full review of the written submissions hereon, the within motion is hereby denied." Defendant, with new counsel, filed a timely appeal. II. We do not understand the government here to be seriously contending that Amendment 488 is inapplicable to liquid LSD. The sole reference to liquid LSD in the amendment implies otherwise.1 All courts to address the issue, although 1 differing over the precise methodology to be employed, agree that the full weight of the liquid LSD is no longer to be included in calculating drug quantities. See, e.g., United ___ ____ ______ States v. Ingram, 67 F.3d 126 (6th Cir. 1995); United States ______ ______ _____________  ____________________ 1 See U.S.S.G. 2D1.1 n.16 ("In the case of liquid LSD 1 ___ (LSD that has not been placed onto a carrier medium), using _____ the weight of the LSD alone to calculate the offense level _____________________________________________________________ may not adequately reflect the seriousness of the offense. In such a case, an upward departure may be warranted.") (emphasis added). -3- v. Turner, 59 F.3d 481 (4th Cir. 1995); United States v. ______ ______________ Jordan, 842 F. Supp. 1031 (M.D. Tenn. 1994). And in a ______ separate appeal from Maine involving the same government appellee, this court remanded for resentencing based on "the government's concession that the weight of the 'liquid LSD' should have been recalculated" in accordance with Amendment 488; we there agreed that "the commentary arguably contemplates some adjustment where liquid LSD is involved." United States v. Lowden, 36 F.3d 1090, 1994 WL 497586, at *1 _____________ ______ (1st Cir. 1994) (table) (per curiam).2 2 Instead, the government interposes various procedural objections that, in its view, foreclose defendant from seeking such relief at this juncture. It first contends that, just as in the habeas context, a defendant is precluded from filing a "successive" or "repetitive" 3582(c)(2) motion except under narrow circumstances. Yet even on the assumption that defendant's earlier appeal from the court's sua sponte order constituted such a motion, the analogy is __________ strained. A habeas petition is governed by specific rules  ____________________ 2 As it did below, the government only intimates on 2 appeal that the amendment might be inapplicable--suggesting that the Probation Office did not earlier apply the revised formula to liquid LSD because the drug was not "on" a carrier medium "as required by the amendment" but rather "in" it. Yet the amended commentary uses the words "on" and "in" interchangeably. And the amendment's definition of liquid LSD as "LSD that has not been placed onto a carrier medium," see note 1 supra, indicates that the liquid solvent does not ___ _____ constitute a carrier medium. See, e.g., Ingram, 67 F.3d at ___ ____ ______ 128; Turner, 59 F.3d at 485. ______ -4- restricting multiple filings; a 3582(c)(2) motion is not. See, e.g., United States v. Hollenbeck, 932 F. Supp. 53, 56 ___ ____ _____________ __________ (N.D.N.Y. 1996). And the concerns giving rise to such constraints in the habeas context are implicated here to a far lesser extent. Instead, a motion under 3582(c)(2) would appear more akin to one under the former version of Fed. R. Crim. P. 35. And it was agreed that successive motions were permissible under that rule. See, e.g., Heflin ___ ____ ______ v. United States, 358 U.S. 415, 418 n.7 (1959); Ekberg v. _____________ ______ United States, 167 F.2d 380, 384 (1st Cir. 1948).3 3 _____________ The government also insists that defendant, having pled guilty to an indictment charging distribution of at least ten grams of LSD and having stipulated to a heroin equivalent of 99 kilograms for sentencing purposes, cannot now renege on such agreements. Yet the indictment and the stipulation were both based upon a "mixture or substance" containing a detectable amount of LSD--a methodology later discarded by Amendment 488. Our decision in United States v. Lindia, 82 _____________ ______ F.3d 1154, 1159 n.3 (1st Cir. 1996), on which the government relies, does not dictate that such stipulated drug quantities were immune from later modification resulting from an  ____________________ 3 Neither below nor on appeal has the government 3 contended that this court's dismissal of the earlier appeal constitutes the law of the case binding on the district court. The matter is therefore waived. See, e.g., Castillo ___ ____ ________ v. United States, 34 F.3d 443, 445 (7th Cir. 1994). We would _____________ be inclined not to rely on the doctrine in any event. See ___ note 4 infra. _____ -5- intervening amendment. Indeed, under the government's view, the district court would have been precluded from reducing the quantity of drugs attributable to defendant in the 1993 amended judgment. In the alternative, the government contends that the district court properly denied the motion as an exercise of discretion. To be sure, given the discretion entrusted to the lower court in this context, "most resentencing battles will be won or lost in the district court, not in an appellate venue." United States v. LaBonte, 70 F.3d 1396, _____________ _______ 1411 (1st Cir. 1995), cert. granted, 116 S. Ct. 2545 (1996). _____________ Yet the court here seemingly denied the motion based on one or more of the arguments advanced by the government below. As a result, it is possible that the district court may have misapprehended that Amendment 488 was inapplicable to liquid LSD (a misapprehension shared by this court, we might add, at the time of defendant's earlier appeal). It is likewise possible that the lower court denied relief based on the mistaken notion that defendant's request constituted an impermissible "successive" motion.4 Given these possible 4  ____________________ 4 It is also conceivable (despite the lack of any such 4 contention from the government) that the lower court felt itself bound by this court's earlier decision on law of the case grounds--a rationale with which it would be difficult to quarrel. Even if so, that doctrine only "directs a court's discretion[;] it does not limit the tribunal's power." Arizona v. California, 460 U.S. 605, 618 (1983). And under _______ __________ the circumstances presented--particularly the clarification of the law in the wake of defendant's earlier appeal--we -6- misapprehensions, urged by the government, the district court might choose now to do something different. We think a remand is appropriate and vacate the sentence. As a final argument, the government suggests that the lower court calculated the revised sentencing range under the amendment, determined that an upward departure to 293 months would be warranted, and then denied the motion simply because defendant was already at that level. Yet the government mentioned the possibility of an upward departure only in passing below, and there is no indication that the district court engaged in any such undertaking. Given the magnitude of any possible such departure here (if defendant's calculations bear out, he will be subject to an offense level of 32, with a range of 121 to 151 months), the government's conjecture on the ambiguous record before us does not suffice. At the same time, we note that Amendment 488 encourages an upward departure in cases of liquid LSD, and the court remains free to take such action on remand. In deciding whether a reduction of sentence is warranted, and if so to what extent, the district court should first calculate the revised sentencing range under the amendment. This inquiry will require ascertaining either the weight of "pure" LSD dissolved in the liquid solvent or the number of dosage units contained therein. Defendant has  ____________________ thinkit would be inappropriate to invoke that doctrine here.  -7- proffered a figure for the weight of pure LSD, one apparently drawn from government laboratory reports; as those reports are not in the record, that figure cannot be confirmed. Alternatively, he notes that the original presentence report attributed a total of 7500 dosage units to 419 of the 485 grams of liquid LSD for which he was responsible. By way of extrapolation, and on the assumption that the remaining 66 grams were of comparable strength, he derives a total number of dosage units (8,680) for the full 485 grams. If defendant's factual assumptions prove valid, the court might be persuaded to adopt such an approach. Alternatively, additional evidence may be received. We leave these matters for resolution by the district court in the first instance.5 5 Vacated and remanded for further proceedings. See Loc. ________________________________________________________ R. 27.1. ________  ____________________ 5 We express no view as to whether the number of dosage 5 units should be multiplied by 0.05 mg (the presumptive weight of pure LSD per dose), see Turner, 59 F.3d at 485-91, or by ___ ______ 0.4 mg (the amendment's conversion factor), see Ingram, 67 ___ ______ F.3d at 128. Indeed, it may prove unnecessary to choose between these competing approaches in the instant case. -8-