**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-20500**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**MATTHEW L. MORGAN,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
_____

May 23, 2002

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For Matthew Morgan's appeal from his guilty plea convictions for conspiracy to possess, and possession, with intent to distribute ten grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(v), 846, and 18 U.S.C. § 2, primarily at issue is whether, for sentencing purposes, the district court erred in considering the weight of the liquid solution in which the LSD was contained.

Consistent with the holdings of three circuits, discussed *infra*, only the weight of the LSD in the solution should have been considered for that purpose. Although, as a result, we **VACATE** the judgment (including 151 months imprisonment), we **REMAND** for

imposition of the ten-year minimum sentence mandated by 21 U.S.C. § 841 (b)(1)(A)(v).

## I.

In August 2000, Drug Enforcement Administration (DEA) Agents arranged, through an informant, to purchase 2000 dosage units of LSD from James Ray Gay. Gay and the informant traveled together to an apartment complex; Gay took into the complex $2,600 in marked money provided by the informant; and Gay returned with three sheets of blotter paper. According to subsequent analysis, the paper contained 1,246 dosage units of LSD, with a net weight of 7.9 grams.

Later that month, DEA Agents again arranged, through the informant, to purchase an additional 2000 dosage units from Gay. The informant gave Gay $2,500 in marked money to purchase the LSD. DEA Agents observed: Gay and the informant drive together to the apartment complex at which the earlier purchase had been made; Gay exit that vehicle, enter Apartment 19 in that complex, and remain for several minutes; and Gay return to the vehicle holding something. Gay gave the informant two sheets of blotter paper and ten bottles containing liquid, which the informant placed in the vehicle's trunk. Gay was arrested at the scene. Subsequent analysis determined: the paper contained 627 dosage units of LSD, with a net weight of 4.1 grams; the liquid solution had a net weight of 18.2 grams and contained a detectable amount of LSD.

Shortly after Gay's arrest, DEA Agents entered Apartment 19, detained Morgan and two others, and obtained a search warrant for

2

the premises. The Agents found: 13 bottles, labeled "Sweet Breath", containing a liquid solution, which had a net weight of 23.6 grams, with a detectable amount of LSD; two sheets of blotter paper, containing 128 dosage units of LSD, with a net weight of .83 grams; and $2,380 of the marked money, of which $2,000 was hidden in Morgan's shoe.

Morgan pleaded guilty to conspiracy to possess, and possession, with intent to distribute more than ten grams of LSD. Prior to accepting the plea, the district court informed Morgan the charges potentially subjected him to a ten-year mandatory minimum sentence.

Citing U.S.S.G. § 2D1.1 cmt. n.(H), discussed *infra*, the Presentence Investigation Report (PSR) attributed a .4 milligram weight to each dosage unit found on the seized blotter paper, which reflected a weight of 302 milligrams of LSD. The PSR counted the entire weight of the liquid containing the LSD — 41.8 grams. Therefore, for sentencing purposes, the PSR used a total weight of 42.1 grams to assign a base offense level of 34; recommended a three-level reduction for acceptance of responsibility, resulting in a total offense level of 31; and placed Morgan's criminal history category at 4.

Morgan objected to the PSR, maintaining only the weight of the *pure LSD alone* in the liquid, not the entire weight of the liquid, should be considered and objecting to the Government's failure to determine that greatly lesser pure LSD weight. In an Addendum to

the PSR, the Probation Officer recommended rejecting Morgan's objections.

At sentencing, the district court allowed Morgan to supplement his objections with lab reports indicating only 113.5 milligrams of LSD in the 41.8 grams of liquid solution. In that regard, Morgan continued to object that only the weight of the pure LSD should be considered. He did not object, however, to application of the ten-year minimum sentence mandated by 21 U.S.C. § 841(b). The district court overruled Morgan's objections and considered the entire weight of the solution (41.8 grams) for sentencing purposes. Based upon the total weight of 42.1 grams, Morgan was sentenced, *inter alia*, to 151 months imprisonment (the minimum under the guideline range).

## II.

The underlying facts (the relative weights of the pure LSD and liquid solution) are not in dispute. At issue is only the court's using the weight of the solution. Its application of the Sentencing Guidelines is reviewed *de novo*. **United States v. Henderson**, 254 F.3d 543 (5th Cir. 2001).

## A.

Consistent with the holdings by three circuits, Morgan contends that, when LSD is contained in a liquid solution, the weight of the *pure LSD alone* (the LSD) should be used to determine the offense level. **United States v. Camacho**, 261 F.3d 1071, 1074 (11th Cir. 2001); **United States v. Ingram,** 67 F.3d 126, 128 (6th Cir. 1995); **United States v. Turner**, 59 F.3d 481, 485 (4th Cir.

4

1995); *see **United States v. Jordan***, 842 F. Supp. 1031, 1033 (M.D. Tenn. 1994). The Government counters that these circuits' approaches are neither logically necessary nor consistent with the relevant statutes.

A graduated system of penalties is provided for by 21 U.S.C. § 841, based upon the quantity of the "mixture or substance containing a detectable amount of ... LSD". 21 U.S.C. § 841(b)(1)(A)(v). Along this line, Note (H) to U.S.S.G. § 2D1.1(c) ("DRUG QUANTITY TABLE") was adopted subsequent to ***Chapman v. United States***, 500 U.S. 453, 456 (1991) (weight of carrier medium *included* in the weight of LSD). *See* U.S.S.G. app. C amend. 488 (1998). Note (H), which became effective 1 November 1993, states, in relevant part:

> In the case of *LSD on a carrier medium* (*e.g.*, a sheet of blotter paper), do *not* use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table.

U.S.S.G. § 2D1.1(c) cmt. n.(H) (emphasis added).

Similarly, Application Note 16 to U.S.S.G. § 2D1.1 was adopted subsequent to ***Chapman***, in the amendment to the Guidelines that adopted Note (H). Application Note 16 provides, in pertinent part: "In the case of liquid LSD (LSD that has *not* been placed onto a carrier medium), using the *weight of the LSD alone* to calculate the offense level may *not* adequately reflect the seriousness of the offense. In such a case, an upward departure may be warranted". § 2D1.1 cmt. n.16 (emphasis added). (Morgan was sentenced under the year 2000 edition of the Sentencing Guidelines Manual. In the

5

2001 edition, Application Note 16 is now Application Note 15. *See* U.S.S.G. § 2D1.1 (2001).)

Note (H) excludes only the weight of a *carrier medium* when LSD is on it; the Note does not address LSD's being contained in a liquid solution. And, Note (A) instructs: "*Unless otherwise specified*, the weight ... refers to the entire weight of any mixture or substance". § 2D1.1(c) cmt. n.(A) (emphasis added). Therefore, according to the Government, because an alternative weight is specified only when LSD is on a carrier medium, the aggregate weight of the LSD and the liquid solution should be used for sentencing in this case, because the solution is "a mixture or substance containing a detectable amount" of LSD. 21 U.S.C. § 841(b)(1)(A)(v).

Application Note 1 of U.S.S.G. § 2D1.1 provides:

> Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

U.S.S.G. § 2D1.1 cmt. n.1.

As a result, the Government contends: LSD is saleable when contained in a liquid solution; accordingly, the solution should not be excluded from the "mixture or substance", because the solution does not have to "be separated from the controlled

6

substance before the controlled substance can be used". § 2D1.1 cmt. n.1. Moreover, to make dosage units, the liquid solution is sprayed onto blotter paper, *see* **Turner**, 59 F.3d at 485; therefore, the Government maintains the solution containing the LSD is "used" to manufacture doses of LSD.

The Government's contentions have considerable force. Nevertheless, they do not persuade us that the approach of our three sister circuits is incorrect.

First, because Note 16 specifies upward departures may be warranted when sentencing based upon the weight of "liquid LSD" (LSD contained in a liquid solution), liquid LSD is a mixture or substance that the Guidelines have apparently excluded — "otherwise specified" — from use as the "entire weight of any mixture or substance" for sentencing purposes. *See* U.S.S.G. § 2D1.1(c) cmt. n.(A).

Second, for LSD, Application Note 1's reference to "use" of a controlled substance is to *consumption* of that substance, not *using* it to make a marketable product. *See, e.g.,* U.S.S.G. § 2D1.1 cmt. n.1 (excluding waste water used in the manufacture of a controlled substance); **Camacho,** 261 F.3d at 1074; **Turner**, 59 F.3d at 485 (the liquid solution evaporates prior to consumption), 487 n.6 (drug users do *not* ingest liquid LSD because of the inability to control dosage and because the solution is usually a toxic substance) & 488 n.8.

Along this line, and as quoted above, Application Note 1 provides: "If such material cannot readily be separated from the

7

mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted". U.S.S.G. § 2D1.1 cmt. n.1. As demonstrated by the lab reports Morgan submitted at sentencing, by the chemical nature of the solution to evaporate when the LSD-liquid solution is applied to a carrier medium, and by the other opinions on this issue, the LSD can be readily separated from this type of solution to determine the quantity of LSD (the "pure LSD alone").

Therefore, we agree with the Fourth Circuit's reasoning in *Turner*, 59 F.3d at 486-88: pursuant to Note (H), the .4 milligram conversion factor used for LSD on a carrier medium is not used with liquid LSD; Application Note 16's express authorization for upward departures would be meaningless if the Guidelines intended the entire weight of the combined LSD and liquid solution to be counted; and using the weight of *pure LSD alone* will eliminate sentencing discrepancies when LSD contained in a liquid solution is involved.

Accordingly, for this issue of first impression for our circuit, we hold: when the controlled substance is LSD contained in a liquid solution, the weight of the *pure LSD alone* should be used in determining the *base offense level under the Guidelines*. *See* **Camacho**, 261 F.3d at 1074-75; **United States v. Sia**, No. 96-1808, 1996 WL 728191 (1st Cir.) (unpublished); **Ingram,** 67 F.3d at 128; **Turner**, 59 F.3d at 485; **Jordan**, 842 F. Supp. at 1033.

8

This holding, however, does not end our review of Morgan's sentence. Even though the amount of pure LSD involved is less than ten grams, his guilty plea included his possessing, with intent to distribute, *ten grams or more of LSD*, triggering the ten-year minimum sentence mandated by 21 U.S.C. § 841(b)(1)(A)(v). Pursuant to U.S.S.G. § 5G1.1(b), the statutory minimum sentence is employed when it is greater than the maximum sentence based upon the Guidelines. (Using the weight of the pure LSD alone, the amount for sentencing Morgan under the Guidelines would have been 415.5 milligrams, resulting in a sentence much less than the mandatory minimum.)

Along this line, Morgan was informed on at least two occasions by the district court that he faced a mandatory minimum ten-year sentence. The court did not impose the mandatory minimum because, as calculated by the court, Morgan's sentence based upon the Guidelines exceeded the mandatory minimum by 31 months.

Morgan objected to the applicability of the mandatory minimum for the first time on appeal. Accordingly, any challenge to the ten-year mandatory minimum is reviewed only for plain error. *E.g.*, **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995).

As discussed below, for purposes of imposing the mandatory minimum, there was no error in including the liquid solution for calculating the weight of the LSD. Moreover, even had there been error, it was neither "clear" nor "obvious" for plain error

9

purposes.  *See id.* at 162-63.  Finally, even if there was clear or obvious error, Morgan's substantial rights are not affected; he chose to plead guilty to the charge warranting a mandatory minimum ten-year sentence.

Amendments to the Guidelines do not override *Chapman* for the purpose of statutory mandatory minimums.  *See* U.S.S.G. § 2D1.1 cmt. background; *United States v. Whitebird*, 55 F.3d 1007, 1010 (5th Cir. 1995) (Guidelines' deemed weight of .4 milligrams per dose does not overrule *Chapman*'s use of the weight of the carrier medium when determining the mandatory minimum sentence); *United States v. Pardue*, 36 F.3d 429, 431 (5th Cir. 1994), *cert. denied*, 514 U.S. 1113 (1995).  As demonstrated by the sale to Gay and the confidential informant of the bottles of liquid solution containing the LSD, the "market-oriented approach" followed in *Chapman*, 500 U.S. at 461 (internal quotation marks omitted), 465-66, warrants including the weight of the liquid solution when determining the mandatory minimum sentence.  It is true that LSD is not consumed when contained in the liquid solution at issue here, but distribution of LSD by traffickers occurs in this manner.

Accordingly, the mandatory minimum for LSD implemented by 21 U.S.C. § 841(b)(1)(A)(5) is rational.  *See id; cf. United States v. Palacios-Molina*, 7 F.3d 49, 53 (5th Cir. 1993) (cocaine contained in wine).  Again, Morgan admitted, and pled guilty, to possessing, with intent to distribute, more than ten grams of a mixture or substance containing a detectable amount of LSD.

## III.

For the foregoing reasons, the judgment is **VACATED**, and this case is **REMANDED** for resentencing and entry of judgment to include 120 months imprisonment, in accordance with the mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(A)(v).

*VACATED and REMANDED*

11